UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
=================================================================

MILTON LILLY and DONALD
GROGAN, on behalf of themselves
And a class of persons similarly
Situated,

                              Plaintiffs,

v.                                         6:07-CV-0340 (NPM/GJD)

ONEIDA LTD. EMPLOYEE BENEFITS
ADMINISTRATIVE COMMITTEE;
ONEIDA LTD. MANAGEMENT
DEVELOPMENT and EXECUTIVE
COMPENSATION COMMITTEE;
ONEIDA LTD. PENSION and PROFIT
SHARING FUND INVESTMENT
COMMITTEE; WILBUR D. ALLEN, et al.,

                              Defendants.
-----------------------------------------------------------------------------------------------------

APPEARANCES                               OF COUNSEL

KELLER ROHRBACK P.L.C.            BRITT L. TINGLUM, ESQ.
Attorney for Plaintiffs
3101 N. Central Ave., Suite 1400
Phoenix, AZ  85012

KELLER ROHRBACK P.L.C.            DEREK W. LOESER, ESQ.
Attorney for Plaintiffs
3101 N. Central Ave., Suite 1400
Phoenix, AZ  85012

KELLER ROHRBACK P.L.C.            GARY GOTTO, ESQ.
Attorney for Plaintiffs
3101 N. Central Ave., Suite 1400
Phoenix, AZ  85012

KELLER ROHRBACK P.L.C.              LYNN LINCOLN SARKO, ESQ.
Attorney for Plaintiffs
3101 N. Central Ave., Suite 1400
Phoenix, AZ  85012

KELLER ROHRBACK P.L.C.              RON KILGARD, ESQ.
Attorney for Plaintiffs
3101 N. Central Ave., Suite 1400
Phoenix, AZ  85012

DEGRAFF, FOY, KUNZ & DEVINE, LLP   TERENCE J. DEVINE, ESQ.
Attorney for Plaintiffs
90 State St, Suite 1100
Albany, NY  12207-1780

PROSKAUER ROSE LLP                 HOWARD SHAPIRO, ESQ.
Attorney for Defendants
909 Poydras Street, Suite 1100
New Orleans, LA  70112-4017

PROSKAUER ROSE LLP                 NICOLE A. EICHBERGER, ESQ.
Attorney for Defendants
909 Poydras Street, Suite 1100
New Orleans, LA  70112

BOND, SCHOENECK & KING, PLLC       LOUIS ORBACH, ESQ.
Attorney for Defendants
One Lincoln Center
Syracuse, New York  13202

BOND, SCHOENECK & KING, PLLC       SUZANNE M. MESSER, ESQ.
Attorney for Defendants
One Lincoln Center
Syracuse, New York  13202

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

This is a class action filed by plaintiffs Milton Lilly ("Lilly") and Donald Grogan ("Grogan") (together, "named plaintiffs"), on behalf of themselves and others similarly situated (collectively, "plaintiffs"), pursuant to 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against the Oneida Ltd. Employee Benefits Administrative Committee, the Oneida Ltd. Management Development and Executive Compensation Committee, the Oneida Ltd. Pension and Profit Sharing Fund Investment Committee, Wilbur D. Allen, William F. Allyn, Christine Booth, Andrew Church, Allen H. Conseur, Clarence A. Davis, Georgia S. Derrico, J. Peter Fobare, Gregory M. Harden, Shelley J. Hyde, Peter J. Kallet, David Keenan, William C. Langley, Peter J. Marshall, Whitney P. Pidot, Hugh R. Rovit, Christopher H. Smith, Fred Spivak, Brian Suba, Catherine H. Suttmeier, William M. Tuck, Terry G. Westbrook, Nick White, and John and Jane Does 1-20 (collectively, "defendants").  In their Second Amended Class Action Complaint (the "complaint"), plaintiffs assert that all defendants were fiduciaries of the Oneida Ltd. Employee Stock Ownership Plan (the "Plan," or "ESOP"),  who breached their fiduciary duty to the plaintiffs by their failure to act solely in the

interest of the participants and beneficiaries of the Plan, and for failure to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the period of May 28, 2003 to March 20, 2006 (the "Class Period").

Plaintiffs aver that the court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and personal jurisdiction over the defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), because they would all be subject to the jurisdiction of a court of general jurisdiction in the State of New York.

Currently before the court is a motion by the defendants to dismiss the complaint in its entirety, with prejudice, for lack of subject matter jurisdiction pursuant to Rule (12)(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P") (Doc. No. 88 ).  Defendants allege that the named plaintiffs have suffered no requisite injury to gain standing to sue.  For the reasons set forth below, defendants' motion will be denied.

## I.    Facts

The following facts are taken from  the complaint, except as noted, and are construed as true for the purpose of this motion.  Lilly and Grogan worked for Oneida Ltd. (heretofore, "Oneida") beginning in 1979 and 1986 respectively, and

at the time the complaint was filed, were still employed by Oneida.  Both were

participants in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7),

and both held Oneida common stock in their respective accounts under the Plan

during the Class Period.  The individually named defendants served at relevant

times as directors of Oneida's Board of Directors (the "Director Defendants"),

committee members of the Pension and Profit Sharing Committee of the Board

(the "Director Committee Defendants"), and/or committee members of the

Employee Benefits Administrative Committee of the Board (the "Administrative

Committee Defendants").

Oneida Ltd. is today one of the world's largest marketers of stainless steel

flatware, and has a long and storied history as a manufacturer of silver tableware,

dating back to 1848.[1]  In recent years, and during the Class Period at issue here,

Oneida was plagued by a set of financial and operational problems.  In the mid-to-

late 1990s, Oneida acquired a number of companies that expanded Oneida's

business beyond the manufacture of flatware.  On November 14, 1996, Oneida

acquired the assets of THC Systems, Inc., an importer and marketer of vitreous

china and porcelain dinnerware for the food service industry.  In June 1998,

---

[1]     See About Oneida: History of Community at www.oneida.com

Oneida acquired the assets of Badgin Nominees Pty. Ltd., which operated two Australian-based businesses, Stanley Rogers & Son, an importer and marketer of stainless steel and silverplated flatware to retail customers in Australia and New Zealand, and the assets of Westminster China, an importer and marketer of porcelain dinnerware in Australia and New Zealand.  Through these acquisitions and through restructuring efforts, discussed below, Oneida began an attempt to move from the manufacturing of marketed tableware to sourcing tableware.  In January of 1999, Oneida announced that it was implementing a restructuring program that was designed to reduce overhead expenses and enhance Oneida's earnings and cash flow.  The restructuring program included voluntary retirement offers and the elimination of what Oneida termed "overhead positions." Doc. No. 40 at 21.

In March of 1999, as a continuation of its restructuring efforts, Oneida announced its intent to eliminate 200 positions in its workforce, and to close its manufacturing facility in Niagara Falls, Canada.  On May 30, 2000, Oneida acquired Viners of Sheffield Limited, a marketer of consumer flatware and cookware in the United Kingdom ("U.K.").  Oneida also acquired exclusive distribution rights for Schott Zweisel crystal in the U.K, including both consumer and foodservice markets.  A press release asserted that these acquisitions "are the

6

latest in a series of moves by Oneida to support its strategic plan of becoming a worldwide leader in the global tableware market." Id. at 23. On May 31, 2000, Oneida announced in a press release that "it had signed a definitive agreement to acquire all outstanding shares of Delco International, Ltd., a marketer of foodservice tableware to foodservice distributors, chains and airlines." Id.

Oneida had five years of sales growth from 1996 to 2001.[2]  In the aftermath of the terrorist acts of September 11, 2001, however, airlines banned knives, cutting orders to Oneida by $25 million.  Other major companies, including the Marriott hotel chain, saw their need for flatware diminish, and a drop in orders for Oneida products ensued.[3]  Oneida began to cut expenses by sending manufacturing work to Asia, by closing plants closer to home, and by laying off workers.  Between 1999 and 2004, Oneida closed all its manufacturing facilities in Canada, Mexico, Italy and China.  Oneida laid workers off, and the stock price, $12.95 per Oneida share in October 2002, began a steady decline, never again to recover to that level.

In May of 2003, Oneida reported a first quarter net loss of $3.4 million.  On

---

[2]     Id., citing Chana R. Schoenberger, Tarnished, Forbes Magazine, March 15, 2004. ( http://www.forbes.com/forbes/2004/0315/081.html ).

[3]     This information was obtained from the Forbes article cited supra.  The plaintiffs omitted the impact of September 11, 2001 events from the complaint.

7

May 28, 2003, Oneida announced at its annual meeting that for the first time in 67 years, shareholders would not be getting a dividend check. Oneida stock closed at $9.80 per share. On June 12, 2003, the third shift at Oneida-owned dinnerware manufacturing facility Buffalo China was eliminated, effectively laying off 90 employees. Doc. No 40 at 24-5. On August 27, 2003, Oneida reported a second quarter loss of $3.7 million. Oneida also reported that it had secured a waiver of the financial covenants under its credit agreement with certain lenders, and that "the Company will probably fail to meet [the] requirements" of more restrictive covenants that had to be met by October 26, 2003. Oneida also cut an additional 100 jobs at its main manufacturing plant. Id. at 25.

On October 8, 2003, Oneida stock closed at $3.05 per share. On October 31, 2003, Oneida issued a press release announcing that it would close five of its factory sites. In November of 2003, Oneida issued press releases, announcing first that it had obtained waivers, then had obtained extended waivers from its lenders. The bank lenders agreed to a postponement of a $5 million reduction in Oneida's credit availability, and senior note holders agreed to defer until November 21, 2003 a $3.9 million payment from the company that had been due on October 31, 2003. On November 23, 2003, Oneida issued a press release stating that it had obtained further waivers from its lenders. Id. at 26. By April 30,

2004, Price Waterhouse Cooper LLP, Oneida's independent auditor, was obligated to disclose Oneida's significant financial losses and continuing violation of its debt covenants, concluding that "[t]hese matters raise substantial doubt about the Company's ability to continue as a going concern." Id. at 27.  By early May of 2004, Oneida had significantly reduced its workforce and eliminated health care insurance for its retirees.  Oneida's stock price was $.84 per share.  On May 11, 2004, Oneida announced that the company's common stock had been suspended from the New York Stock Exchange and would be traded on the over the counter market.  In late May of 2004, Oneida hired two New York firms to advise the company on restructuring and strategy.  On June 24, 2004, Oneida announced that it had reached an agreement in principle regarding the restructuring of its existing indebtedness of $233.2 million.  The agreement provided for a new $30 million revolving credit facility and for the conversion of $30 million of the debt into 29.8 million shares of common stock, resulting in the lenders holding 62% of the common stock.  The lenders would also become entitled to designate six of the nine members of Oneida's board of directors.  The debt restructuring closed on August 9, 2004.  Id. at 31.

On September 9, 2004, Oneida announced its decision to cease operations of its flatware factory in Sherrill, New York, in the first quarter of 2005.  The

closure of the plant would result in the firing of 500 workers. Id. at 32.  Despite

Oneida's debt restructuring, facility closures and employee layoffs, the quarterly

losses continued.  Id. at 35.   By April of 2005, Oneida was in default of its

restructured indebtedness.  On September 30, 2005, the Internal Revenue Service

granted Oneida's application for a waiver of its 2004 minimum funding

requirements in the amount of $7.8 million for the Retirement Plan for Employees

of Oneida Ltd. Id. at 36.

On March 9, 2006, Oneida announced that it had reached an agreement with

its lenders on a recapitalization plan.  The terms of that plan required Oneida to

file a voluntary petition for a prenegotiated reorganization under Chapter 11 of the

U.S. Bankruptcy Code.  Upon confirmation of the recapitalization plan, all of

Oneida's existing common and preferred stock would be cancelled and receive no

recovery, and new common stock would be issued to the holders of Oneida's

Tranche B[4]  debt.   Id. at 37. Oneida filed for Chapter 11 bankruptcy protection on

---

[4]      A Tranche B loan is also known as a second lien.  Tranche (transh), n. [French "slice"] A bond issue derived from a pooling of similar debt obligations. BLACK'S LAW DICTIONARY (8TH ed. 2004) (WEST 2008).   Second lien financing is a form of financing secured on a second ranking basis by (more or less) the same security, which secures the first ranking financing. The first lien lenders and the second lien lenders agree that, in the event of a security enforcement or bankruptcy, the first lien lenders will be paid in full from the security realisation proceeds before the second lien lenders receive any proceeds. In the US market, this ranking of security is known as "lien subordination".  Second lien financing is also known as tranche B loan, junior secured loan, last-out participation, or second-lien loan. http://encyclopedia.thefreedictionary.com (2008)

March 19, 2006.[5] Id. at 21.  The Plan participants were notified that effective

March 20, 2006, the shares held in the Plan were to be sold and liquidation would

be completed by March 27, 2006.

Upon settlement of all trades related to the sales of the Oneida shares, Plan

participants' balances in Oneida shares were automatically transferred to the

Fidelity Retirement Government Money Market Portfolio.  Oneida stock closed at

$0.075 per share on March 20, 2006. Id. at 37.  Plaintiffs maintain and reiterate

throughout the complaint that, inter alia, Oneida was seriously mismanaged during

the Class Period,  and defendants knew or should have known that Oneida stock

was an imprudent investment.

On March 29, 2007, plaintiffs filed a class action complaint in this court,

alleging an ERISA violation.   Since filing their complaint, both named plaintiffs

have retired from Oneida.  Defendants filed their Rule 12(b)(1) motion to dismiss

on September 7, 2007, asserting that the purpose of the Oneida ESOP was as a

funding mechanism for the Oneida retirement plan.  Defendants assert that

plaintiffs have no Article III standing because they have not suffered any injury in

fact, nor have they pleaded any claims that are redressable under ERISA.

---

[5]        Defendants cite the date of filing for Chapter 11 bankruptcy as March 20, 2006.

## II.   DISCUSSION

### A.   Motion To Dismiss Standard

The defendants seek to dismiss plaintiffs' complaint in its entirety based on their assertion that this court lacks subject matter jurisdiction.  Specifically, they argue that plaintiffs have suffered no injury to afford them standing to sue.  The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807 (1994).  In addition, the allegations of the complaint should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct 1683 (1973).  "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1969 n.8 (May 21, 2007).  To meet the standard of adequacy, the complaint should contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  "In assessing the legal sufficiency of a claim, the court may consider

12

those facts alleged in the complaint, as well as 'documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'" <u>Patane v. Clark</u>, 508 F.3d 106, 112 (2d Cir. 2007) (quoting <u>Rothman v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000)).

**B.    Standing to assert a claim under ERISA**

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." <u>Ross v. Bank of America, N.A. (USA)</u>, --- F.3d ----, 2008 WL 1836640 * at 2 (2d Cir. 2008) (internal quotations omitted). "Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain any other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. <u>See</u> 29 U.S.C. § 1132(a)(3) (2005)." <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir. 2005).  The court finds that the named plaintiffs in the case at bar are participants as defined by ERISA and therefore have statutory standing to sue.

However, "[t]o establish constitutional standing under Article III, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely

13

redressable by a favorable decision." <u>Ross</u>, 2008 WL 1836640 * at 2.  <u>See</u> <u>also</u>

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119

L.Ed.2d 351 (1992)).  "Injury in fact is a low threshold, which we have held need

not be capable of sustaining a valid cause of action, but may simply be the fear or

anxiety of future harm.  Moreover, the fact that an injury may be outweighed by

other benefits, while often sufficient to defeat a claim for damages, does not

negate standing." <u>Ross</u>, 2008 WL 1836640 * at 3 (internal citations and quotations

omitted).

In the case at bar, plaintiffs allege that they were injured when the various

tangible retirement benefits offered to participants in the Plan were lost when the

ESOP's value was all but destroyed by the actions or inactions of the defendants.

Section 8 of the Plan Document, entitled "Distribution of Vested Interest," sets

forth the manner in which a participant receives his/her savings from the ESOP:

> Distribution of a Participant's Vested Interest from his
> Account will be made, as elected by the Participant in
> advance, (i) entirely in whole Shares, with the value of
> any fractional interest in a Share paid in cash, or (ii)
> entirely in cash.  Notwithstanding the foregoing, if
> applicable corporate charter or bylaw provisions restrict
> ownership of substantially all outstanding Shares to
> Employees or to a plan or trust described in Section
> 401(a) of the Code, then any distribution of a
> Participant's Vested Interest shall be cash.

Doc. No. 95 at 3.

14

Plaintiffs assert that their inability to take a lump sum payment is an injury in fact, because that ability is a valuable asset. Plaintiffs offer a wide range of reasons why participants might prefer to elect a lump sum over an annuity benefit, including the ability to invest the money for a more favorable return, or to meet pressing financial concerns that a lump sum could cure, but an annuity could not. Plaintiffs assert that the "choice" to take a lump sum payment no longer has any value because the cash value of their ESOP accounts was destroyed as a result of the defendants' actions.

Plaintiffs also argue that under the ESOP, married participants were not subject to a survivor annuity restriction. A married participant could take a lump sum distribution from the ESOP and be completely free to spend those funds as he or she saw fit. The Retirement Plan requires married participants, such as Lilly, to provide their spouses with survivor protection on an annuity, which typically reduces the benefit by 10% or more.

Another benefit that the plaintiffs are no longer eligible to enjoy, mentioned briefly above, is the ability to take advantage of better annuity rates on the open market. Plaintiffs argue that a participant who takes a lump sum payment from the ESOP upon retirement will have his/her annuity benefit reduced by an annual factor based on the 30-year U.S. Treasury yields. Participants who are able to take

15

a lump sum payment and roll it into an IRA can purchase their own annuity and receive a higher rate of return in terms of higher monthly benefits.

Finally, plaintiffs argue that the ESOP was designed to work in conjunction with the Retirement Plan to offer participants an enhanced monthly benefit if the ESOP performed well.  In other words, the ESOP was not capped in terms of the benefits it could provide to participants.  Plaintiffs provide an example from the Summary Plan Description ("SPD") outlining how an employee's monthly benefit would be increased if the ESOP gained in value. Doc. No. 95 at 5-6.

Defendants assert that there was no injury to plaintiffs because on the same day that Oneida filed for Chapter 11 bankruptcy protection, Oneida contacted the Pension Benefit Guaranty Corporation ("PBGC") to file its intent to terminate, and on September 6, 2006, the PBGC notified Oneida that it would become the trustee and fiduciary of Oneida's Retirement Plan, assuming the benefits and liabilities of the Plan.  Defendants state that subsequent to the PBGC's takeover of the Plan on October 30, 2006, the PBGC notified participants that their vested benefits under the Retirement Plan would be guaranteed in full, including any funding that would otherwise come from the ESOP.  Defendants argue that PBGC's commitment means that plaintiffs are receiving the same benefits under the Retirement Plan today despite the PBGC's takeover of the Plan. Doc. 88-9 at 5.

16

Defendants argue that the ability of participants to elect a lump sum payment distribution under the ESOP remained, and that Lilly and Grogan were offered the option of a lump sum payment.  Defendants did not address this issue in the context that the ESOP was rendered effectively worthless by the cancellation of the outstanding Oneida stock, nor did they address how the lump sum payment that was offered to the named plaintiffs upon retirement compared to that of an ESOP with viable shares..  Defendants also argue that even if plaintiffs were injured, their claims are not redressable.

Plaintiffs cite Coan v. Kaufman, 457 F.3d 250, 256-57 (2d Cir. 2006) on the issue of redressability. A plaintiff may "seek[] relief under section 502(a)(2) of ERISA, which provides, in relevant part, that civil actions may be brought by ... a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title. 29 U.S.C. § 1132(a)(2).  Section 409 of ERISA (29 U.S.C. § 1109), in turn, provides, inter alia, that a plan fiduciary who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. ERISA § 409(a), 29 U.S.C. § 1109(a)." Id. (internal quotations omitted).  The court finds that at this stage of the litigation, and for the purpose of this motion, plaintiffs have adequately pleaded that their

17

claims are redressable.

A thorough review of the Plan documents for the purpose of this motion makes it clear to this court that a retiring Oneida employee had the right to elect to receive his ESOP allocation as a lump sum of cash or shares.  Upon the cancellation of all existing Oneida stock  on September 15, 2006, discussed supra, plaintiffs argue and the court concurs that the ESOP was effectively rendered worthless.  Plaintiffs argue that the loss of the value of employees' ESOP accounts means that the only remaining viable choice  for the participants upon retirement is the monthly benefit they may receive from the PBGC. Doc. No. 95 at 3. Mindful that its duty is merely to assess the legal feasibility of the complaint, and not to assay the weight of the evidence, the court finds that plaintiffs have adequately pleaded an injury in fact, and one that can be redressed by a ruling in their favor under ERISA.

## III.    CONCLUSION

For the reasons set forth supra, the court DENIES defendants' motion to dismiss (Doc. No 88).

SO ORDERED.

May 8, 2008                              _____

                                        Neal P. McCurn
                                        Senior  U.S. District Judge